UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JEANETTE VENTRONE, et al., | ) |
| Plaintiffs, | ) ) ) |
| vs. | ) ) No.: 4:22-CV-00513-RWS |
| WEBSTER UNIVERSITY, | ) ) ) |
| Defendant. | ) ) |

**DEFENDANT WEBSTER UNIVERSITY'S**
**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

The Court should dismiss Plaintiffs' claims against Defendant Webster University (the "University") for failure to state a claim upon which relief can be granted. Plaintiffs attempt to allege claims for fraud and violation of the Missouri Merchandising Practices Act (MMPA). Each claim hinges on allegations that the University made misrepresentations that induced Plaintiffs to take counseling courses, whose value Plaintiffs dispute. No claim, however, can proceed on such a theory because the educational malpractice doctrine precludes courts from assessing the relative value of education when analyzing any element of any claim. Plaintiffs' MMPA claim fails for other reasons, as well: (1) because Plaintiffs fail to allege a transaction occurring in Missouri, and (2) because Plaintiffs' allegations reveal that they enrolled in the University's courses for a business purpose—not a personal, family, or household purpose. While the University denies that it made misrepresentations to the Plaintiffs, even when treating Plaintiffs' non-conclusory factual allegations as being true (as required by Rule 12), Plaintiffs fail to state a claim upon which relief can be granted. Therefore, the University requests that the Court enter an order granting the University's Motion to Dismiss, thereby dismissing Plaintiffs' claims with prejudice.

I. **Plaintiffs' claims are barred by the educational malpractice doctrine.**

The educational malpractice doctrine bars all of Plaintiffs' claims because those claims would require the Court to calculate the alleged diminished value of Plaintiffs' education.[1] The educational malpractice doctrine recognizes that it is not the role of courts to micromanage the daily operations of universities. *See Soueidan v. St. Louis Univ.*, 926 F.3d 1029, 1034 (8th Cir. 2019). Furthermore, the doctrine requires dismissal of a claim that would require a court to weigh the relative value of education in order to assess a plaintiffs' damages theory. *See Raimo v. Washington Univ. in St. Louis*, No. 4:20-CV-00634-SEP, 2022 WL 796239, at *5 (E.D. Mo. Mar. 16, 2022). Indeed, a key rationale supporting Missouri courts' recognition of the educational malpractice doctrine is "the inherent uncertainties about causation and the nature of damages in light of such intervening factors as a student's attitude, motivation, temperament, past experience, and home environment." *Dallas Airmotive, Inc. v. FlightSafety Int'l, Inc.*, 277 S.W.3d 696, 700 (Mo. App. 2008). Although assessing the relative value of education as a means of determining damages is forbidden by the educational malpractice doctrine, Plaintiffs would have to establish damages as essential elements of their fraud and MMPA claims. *See Trimble v. Pracna*, 167 S.W.3d 706, 712 n.5 (Mo. 2005) (damages must be proven as one of the nine essential elements of a fraud claim under Missouri law); *Black v. Moneygram Payment Sys., Inc.*, No. 4:15-CV-01767-AGF, 2016 WL 3683003, at *5 (E.D. Mo. July 12, 2016) (MMPA

---

[1] Presumably, Plaintiffs intend to proceed on their fraud claim under Missouri common law given that they filed their case in Missouri state court and alleged their fraud allegations alongside allegations of an MMPA violation. Thus, in seeking dismissal of Plaintiffs' claims, the University relies on Missouri's educational malpractice doctrine. Notably, however, Florida (where Plaintiffs allege they live) and South Carolina (where Plaintiffs allege they enrolled in the University's courses) have also adopted the educational malpractice doctrine. *See Rohn v. Palm Beach Cnty. Sch. Bd.*, No. 11-81408-CIV, 2012 WL 6652940, at *3 (S.D. Fla. Dec. 21, 2012); *Cockrell v. Lexington Cnty. Sch. Dist. One*, No. 3:11-CV-2042-CMC, 2011 WL 5554811, at *10 (D.S.C. Nov. 15, 2011).

claims require a plaintiff to show the plaintiff "suffered an ascertainable loss of money or property"), *aff'd*, 680 F. App'x 503 (8th Cir. 2017).

The educational malpractice doctrine applies in a variety of instances including where "the claim requires an analysis of the quality of education received and in making that analysis the fact-finder must consider principles of duty, standards of care, and the reasonableness of the defendant's conduct," where a "claim that educational services provided were inadequate, substandard, or ineffective," or "[w]here the court is asked to evaluate the course of instruction or the soundness of the method of teaching that has been adopted by an educational institution…." *Id.* (internal quotations omitted). The doctrine applies whether the claims are labeled as arising in contract, tort, or even under the MMPA. *Id. See also Blake v. Career Educ. Corp.*, No. 4:08CV00821ERW, 2009 WL 2567011, at *2 (E.D. Mo. Aug. 18, 2009) (discussing that the doctrine cannot be avoided merely by asserting the claim as fraud under the MMPA).

The Eastern District's recent application of the educational malpractice doctrine in *Raimo* is instructive. There, the plaintiff alleged that his university caused him to suffer damages by substituting online instruction for in-person learning during the early days of the COVID-19 pandemic. *See Raimo*, 2022 WL at *1. The damages theory in *Raimo* relied on a "perceived decrease in the value" of the education that the plaintiff received from online instruction in the spring of 2020. *See id.* at *5-6. The plaintiff argued that the educational malpractice doctrine did not apply to his claims because he did not ask the court to evaluate the quality of his education but only to assess whether the promised in-person instruction occurred. *Id.* The Eastern District rejected this argument because the plaintiffs' damages theory was "based on a perceived decrease in the value of instruction, not the lack of instruction *at all*." *Id.* (emphasis in original).

3

*Raimo* demonstrates that a damages claim that would require a court to quantify the value of an educational experience is "something the educational malpractice doctrine forecloses." *Id.* at *6. As Judge Pitlyk explained in dismissing the plaintiff's claims in *Raimo*: "Allowing a claim requiring a damages calculation that this Court cannot perform without violating Missouri's educational malpractice doctrine to proceed beyond a motion to dismiss would subject the parties to unnecessary expense to further litigate a claim that is not viable on its face." *Id.*

Much like the *Raimo* plaintiff's contention that online instruction has diminished value, Plaintiffs assert in cursory fashion that a degree without accreditation from Council for Accreditation of Counseling and Related Educational Programs (CACREP) "is without value…." Petition, ECF No. 1-1, at ¶ 21. This allegation, however, cannot be reconciled with the fact that Florida (where Plaintiffs claim they live) allows those who do not hold a CACREP accredited degree to achieve licensing as a mental health counselor. *See* Fla. Stat. Ann. § 491.005(4)(b)(1) (providing the requirements for licensure "[i]f the master's degree is earned from a program related to the practice of mental health counseling which is not accredited by the Council for the Accreditation of Counseling and Related Educational Programs").[2] Furthermore, Plaintiffs' own allegations acknowledge that their coursework with the University had value. *See* Petition, ECF No. 1-1, at ¶ 17 (alleging Plaintiffs have "transferred to other institutions which

---

[2] CACREP accreditation (or accreditation from an equivalent organization) will not be required for mental health counseling licensure applicants in Florida until July 1, 2025. *See* Fla. Stat. Ann. § 491.005(4) ("Beginning July 1, 2025, an applicant must have a master's degree from a program that is accredited by the Council for Accreditation of Counseling and Related Educational Programs, the Masters in Psychology and Counseling Accreditation Council, or an equivalent accrediting body which consists of at least 60 semester hours or 80 quarter hours to apply for licensure under this paragraph.").

have CACREP accredited programs for Mental Health Counseling" and that "[t]hose other institutions accepted" some of their "credits with Webster University….").

These points demonstrate that determining what, if any, damages Plaintiffs have experienced would require the Court to quantify the relative value of Plaintiffs' coursework with the University. Such an assessment would need to measure the value of the University's courses in a state that grants mental health counseling licenses without respect to CACREP accreditation. *See* Fla. Stat. Ann. § 491.005(4)(b)(1). Likewise, such an assessment would need to account for the value Plaintiffs received in transferring their University credits to other institutions. The educational malpractice doctrine does not permit such an evaluation.

In short, Plaintiffs' damages theory relies on a perceived decrease in the value of their coursework in the absence of CACREP accreditation—not the lack of any value at all. Thus, just as in *Raimo*, this Court should hold that the educational malpractice doctrine requires dismissal. Allowing Plaintiffs' claims to proceed would necessarily require the Court to assess the value of Plaintiffs' University coursework, which is precisely the ground on which the educational malpractice doctrine forbids courts from treading. Accordingly, Plaintiffs' claims are barred and should be dismissed.

## II.   Plaintiffs fail to state a claim upon which relief can be granted under the MMPA.

In addition to being barred by the educational malpractice doctrine, Plaintiffs' allegations fail to state a cognizable claim under the MMPA. The Petition fails to allege any misconduct occurring in or from Missouri. Rather, the only alleged connection to Missouri is that the University is a Missouri non-profit corporation with a principal place of business in Missouri. *See* Petition, ECF No. 1-1, at ¶ 2. This threadbare assertion will not support a claim under the MMPA with respect to transactions occurring entirely outside of Missouri. Furthermore, the

Petition establishes that the transactions at issue concern a master's-level degree program that Plaintiffs pursued for their professional careers. *See* Petition, ECF No. 1-1, at ¶ 9 ("Plaintiffs plan to pursue careers which require [sic] a CACREP accredited degree.").[3] The allegations therefore establish a business purpose for the transactions at issue—not a personal, family, or household purpose to which the MMPA would apply. Accordingly, Count II fails as a matter of law and should be dismissed.

### a. The Petition fails to allege MMPA violations "in or from" Missouri.

Plaintiffs' MMPA claims are factually deficient because the Petition fails to allege any facts of an MMPA violation occurring in or from the State of Missouri. The MMPA prohibits certain conduct "in connection with the sale or advertisement of any merchandise in trade or commerce or the solicitation of any funds for any charitable purpose, as defined in section 407.453, *in or from the state of Missouri*…." Mo. Rev. Stat. § 407.020.1 (emphasis added). As a matter of law, an MMPA claim will not lie against a defendant simply because it is headquartered in Missouri or because the challenged scheme or advertisement was designed and implemented in Missouri. *See Hale v. Emerson Elec. Co.*, 942 F.3d 401, 404 (8th Cir. 2019); *Perras v. H & R Block,* 789 F.3d 914, 918 (8th Cir. 2015).

For example, in *Barker v. Nestle Purina Petcare Co.*, the court dismissed MMPA claims brought by a citizen of Georgia regarding dog food purchased in Georgia. No. 4:21-CV-01075-MTS, 2022 WL 1288355, at *3 (E.D. Mo. Apr. 29, 2022). The "in or from the state of Missouri" prong was not satisfied by mere allegations that the defendant designed the dog food at the defendant's Missouri headquarters. *Id.* The MMPA did not apply because the allegations in the

---

[3] As noted previously, Plaintiffs are—as a matter of law—mistaken in their belief that they must have a CACREP degree to obtain a mental health counseling license in Florida under current law. *See* Fla. Stat. Ann. § 491.005(4)(b)(1).

*Barker* complaint described a transaction taking place in Georgia, and the plaintiff in that case allegedly experienced damages in Georgia. *Id.*

Here, Plaintiffs allege they "are citizens and residents of the State of Florida," that they enrolled in a program "for students in Florida" with classes scheduled to take place at a "St. Petersburg, Florida campus," and that they attended online classes from a "Myrtle Beach, South Carolina campus." Petition, ECF No. 1-1, at ¶¶ 1, 4, 7. The only allegation in the Petition regarding Missouri is that the University is a Missouri non-profit corporation with a principal office and place of business in Missouri. Petition, ECF No. 1-1, at ¶ 1. That is not enough to state a claim for relief under the MMPA. Accordingly, Count II of the Petition should be dismissed.

### b. The Petition fails to allege "personal, family, or household" transactions.

Plaintiffs' allegations also preclude a claim for relief under the MMPA because those allegations establish that the transactions at issue were not for a personal, family, or household purpose. Because Plaintiffs' allegations demonstrate that they enrolled in University courses for a business purpose, Plaintiffs lack standing under the MMPA. *See Saey v. CompUSA, Inc.*, 174 F.R.D. 448, 450 (E.D. Mo. 1997) (dismissing for lack of standing the claims of an individual who purchased the product for his business). The MMPA is limited to transactions "primarily for personal, family or household purposes…." Mo. Rev. Stat. § 407.05.1(1). Allegations that a plaintiff purchased a service for a personal purpose is conclusory and insufficient to state a claim for relief under the MMPA. *Anderson v. High-Tech Inst.*, No. 11-0506-CV-W-SOW, 2013 WL 12203311, at *2 (W.D. Mo. Jan. 25, 2013). Furthermore, an MMPA claim against an educational institution fails as a matter of law when it is premised on a plaintiffs' allegation that the plaintiff sought an education from the institution for the purpose of attaining employability.

7

*Id.* Such allegations are related to a business purpose and not a personal, family, or household purpose under the MMPA. *Id. See also Reynolds v. Concordia Univ.*, No. 21-CV-2560 (ECT/DTS), 2022 WL 1323236, at *17 (D. Minn. May 3, 2022) (collecting authorities under various state consumer laws to rule that post-secondary education is "ordinarily something used for 'commercial' or economic purposes—to earn a living" and not for a personal, family, or household use).

Here, Plaintiffs allege they "paid tuition and purchased the mental health program advertised by Webster University for personal, household and family purposes." ECF No. 1-1, at ¶ 29. This is a conclusory allegation that the Court may disregard. *See Anderson*, 2013 WL 12203311, at *2 (disregarding conclusory allegation that a product was purchased for a "personal" purpose). Meanwhile, Plaintiffs' factual allegations contend that Plaintiffs enrolled in a master's-level program "titled 'MA in Counseling with an emphasis in Clinical Mental Health Counseling,'" that the University allegedly represented to Plaintiffs that "they would receive a degree with CACREP accreditation," and that "Plaintiffs plan to pursue careers which requires a CACREP accredited degree." *See* ECF No. 1-1, at ¶¶ 4, 6, 9. Because the factual allegations concern a professional degree program sought to further Plaintiffs' careers in the field of mental health counseling, the allegations establish a business purpose for the transactions at issue—not a personal, family, or household purpose. Accordingly, Plaintiffs cannot proceed under the MMPA.

## CONCLUSION

The Petition's claims are barred by the educational malpractice doctrine because Plaintiffs' damages theory in reality requires the Court to calculate a diminished value of Plaintiffs' education. All claims should be dismissed as a result.

In any event, Count II fails to state a claim upon which relief can be granted because it fails to allege any facts to demonstrate that the transactions at issue involved conduct in or from Missouri.  Furthermore, the Petition's allegations establish that the transactions at issue were for a business purpose, which requires dismissal of Plaintiffs' MMPA claim for lack of standing. The MMPA claim therefore fails as a matter of law and Count II should be dismissed.

        ARMSTRONG TEASDALE LLP

        BY: */s/ Travis R. Kearbey*
            Travis R. Kearbey, #58964MO
            7700 Forsyth Blvd., Suite 1800
            St. Louis, Missouri 63105
            Telephone:  314.621.5070
            Fax:  314.621.5065
            tkearbey@atllp.com

        ATTORNEYS FOR DEFENDANT

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 2, 2022, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system and emailed to the following:

David M. Duree, MBE 21003
David M. Duree & Associates, P.C.
312 South Lincoln Avenue
O'Fallon, IL 62269
618.628.0186 (T)/618.628.0259 (F)
law@dmduree.net

ATTORNEYS FOR PLAINTIFFS

                                              */s/ Travis R. Kearbey*